AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 3:25-mj-70993 MAG |
| MICHAEL AGUILERA-CABRERA ) | |
| ) | |
| ) | |
| ) | |
| *Defendant(s)* | |

**FILED**
Aug 15 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  July 30, 2025  in the county of  Oakland and San Francisco  in the
Northern  District of  California , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C) | Distribution of a controlled substance (fentanyl) |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Special Agent Hakeem Oduniyi

☑ Continued on the attached sheet.

Approved as to form  /s/ *Abraham Simmons*
AUSA  Abraham Simmons

/s/ Hakeem Oduniyi
*Complainant's signature*

DEA Special Agent Hakeem Oduniyi
*Printed name and title*

Attested to by the applicant in accordance with FRCP 4.1 by telephone.

Date: 08/14/2025

*Judge's signature*

City and state:  San Francisco, California

Sallie Kim, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Hakeem Oduniyi, a Special Agent of the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Michael AGUILERA-CABRERA ("AGUILERA") with 21 U.S.C. § 841(a)(1) and (b)(1)(C) based on his distribution of a mixture or substance containing a detectable amount of fentanyl on or about July 30, 2025, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA). I have been employed with the DEA and assigned to the Oakland Resident Office since March 2020. As a Special Agent of the DEA, I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am

1

empowered by law to conduct investigations, to execute search warrants issued under the authority of the United States, and to make arrests for offenses of Federal law, including drug offenses.

5. I have attended various trainings regarding narcotics investigations, including a 14-week Basic Agent Training program where trainees are trained on surveillance techniques, evidence processing, drafting drug affidavits, writing search warrants, and interview techniques. Trainees are also trained on drug identification, courtroom testimony, and Federal laws pertaining to the possession, sale, and distribution of illegal narcotics. I hold a B.S. degree in Criminal Justice Administration.

6. I previously served as a Task Force Officer with Immigration Customs Enforcement, Homeland Security Investigations, Border Enforcement Security Task Force, Gulf Coast HIDTA Group. My parent agency was the Gulfport, Mississippi Police Department for approximately 6 years, where I held the rank of Detective in the Narcotics Division for approximately 3 years. While assigned as a HSI TFO, I investigated a multi-state drug trafficking organization that trafficked drugs to include MDMA, cocaine, cocaine base, and marijuana from Houston, TX, through Gulfport, MS, to Atlanta, GA. I also investigated over 10 illegal aliens for illegal entry into the United States as well as illegal aliens in possession of a firearm. While assigned as a Narcotics Detective, I conducted approximately nearly 200 drug investigations that included the illegal possession, sale, and trafficking of methamphetamine, cocaine, cocaine base, MDMA, pharmaceuticals, and marijuana as well as prescription fraud investigations. I also conducted robbery investigations, burglary investigations, and investigations of aggravated assaults.

7. My primary duties as a Special Agent with the DEA include the investigation of organized narcotics traffickers. I have participated in numerous narcotics investigations, during the course of which I have conducted or participated in: physical and wire surveillances, including previous Title III investigations, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefing of informants, and reviews of taped conversations and drug records. I have also been the Affiant for federal search warrants and arrest warrants. Through

my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. I have become familiar with conduct common among drug traffickers such as the concealment of monetary and non-monetary drug proceeds, the use of various conveyances to transport and traffic illegal narcotics, and the use of modern technology to aid in the growth and expansion of the drug trafficking organization.

8. I have performed and continue to perform various duties, which include, but are not limited to:

   a. Working in an undercover capacity principally for the purpose of purchasing drug evidence from wholesalers of illegal drugs.

   b. Working in the capacity of a surveillance agent detecting and recording movement of persons known to be or suspected of being involved in the illegal drug trafficking business.

   c. Working as a case agent directing the investigation of various illegal drug traffickers and their organizations.

   d. Directing investigations involving complex conspiracies in which numerous drug traffickers located in various states, and foreign countries were working in concert to illegally import, possess and distribute illegal drugs within the United States.

9. Collectively, I possess a total of nearly 11 years' worth of knowledge, training, and experience in law enforcement, which encompasses enforcing criminal statutes and conducting investigations.

10. I have personally participated in the investigation discussed in this affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not

set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

11. Under 21 U.S.C. § 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

### A. Introduction

12. 14. Since around July 2025, the DEA has been investigating Michael AGUILERA-CABRERA ("AGUILERA"), who is the suspected user of (510) 600-1952, and Carlos SIERRA-GONZALEZ ("SIERRA") on suspicion of drug trafficking in the San Francisco Bay Area. Based on the investigation to date, agents have determined that AGUILERA, SIERRA, and other members of his drug trafficking organization ("DTO") are mid-level drug distributors operating in Oakland and San Francisco, CA. Based on phone calls between a DEA undercover ("UC") and AGUILERA and drug deals between the UC, AGUILERA, and SIERRA, agents believe AGUILERA and SIERRA have connections to mid-level drug dealers operating in the San Francisco Bay Area.

### B. July 22-29, 2025: The UC and AGUILERA discuss a future fentanyl transaction

13. On or about July 22, 2025, at approximately 3:55 p.m., a DEA UC placed an outgoing call to a subject who was later identified as AGUILERA, who was using (510) 600-1952. The call was captured, recorded, and maintained on DEA's recording system. The following is a preliminary transcription of the conversation between the UC and AGUILERA:

> UC: Are you working today
>
> AGUILERA: Yea
>
> UC: Umm I was wondering if you had the clean shit, the clean

AGUILERA: No

UC: You know the clean right?

AGUILERA: No

UC: huh

AGUILERA: no

UC: What do you have? Do you have the fuckin, the fuckin iso?

AGUILERA: Yea

UC: You got that, what price for an ounce of that shit?

AGUILERA: one thousand one hundred

UC: one thousand one hundred?

AGUILERA: Yea

UC: But You don't have the fucking clean? Cuz the iso is the strong shit, I'm trying to get the clean shit, It's cheaper

AGUILERA: only iso

      14.      Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of the investigation, I believe when the UC asked AGUILERA, "Are you working today," the UC was asking AGUILERA if AGUILERA was selling drugs and I believe AGUILERA confirmed he was. I know drug traffickers, such as AGUILERA, often use the term "clean" and "iso" to reference fentanyl. I know "iso" is often fentanyl that is of purer quality and "clean" is often fentanyl of lesser quality than "iso." I believe UC inquired if AGUILERA had "clean" fentanyl, but AGUILERA told the UC that AGUILERA did not have the clean fentanyl. I believe the UC followed up by asking AGUILERA if AGUILERA had the purer fentanyl ("iso") in which AGUILERA replied, "yea" indicating AGUILERA was in possession of purer fentanyl. I believe the UC asked AGUILERA the price for one ounce of fentanyl and AGUILERA told the UC the price would be $1,100 for one ounce.

      15.      On or about July 23, 2025, at approximately 5:02 p.m., a DEA UC placed an outgoing call to AGUILERA, who was using (510) 600-1952. The call was captured, recorded,

and maintained on DEA's recording system. The following is a preliminary transcription of the conversation between the UC and AGUILERA:

UC: Can you do 11 for the iso?

AGUILERA: Yea, yea we can do, for iso we can do like 11, 11

UC: Ok

16. Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of the investigation, I believe the UC asked AGUILERA if the UC could give AGUILERA $1,100 ("11") for the ounce of "iso" fentanyl. I believe AGUILERA agreed AGUILERA would sell the UC an ounce of "iso" fentanyl in exchange for $1,100.

17. On or about July 28, 2025, at approximately 1:38 p.m., a DEA UC and AGUILERA, who was using (510) 600-1952, engaged in a text message conversation. The conversation was captured, recorded, and maintained on DEA's recording system. The following is a preliminary transcript of the conversation between the UC and AGUILERA:

UC: What's the price for the clean fetty? An ounce

AGUILERA: 1000

UC: Ok that's fine. But can you meet at like 11am? I gotta work after

AGUILERA: If that's okay, just let me know when you're coming here and how much time you're going to have.

18. Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of the investigation, I know drug traffickers, such as AGUILERA, often use the term "fetty" to mean fentanyl. As stated above, I believe the UC asked AGUILERA the price for an ounce of "clean" fentanyl ("fetty") and AGUILERA told the UC the price would be $1,000 ("1000"). I believe the UC and AGUILERA agreed to meet at 11:00 a.m., with no date specified.

19. On or about July 29, 2025, at approximately 6:32 p.m., a DEA UC and AGUILERA, who was using (510) 600-1952, engaged in a text message conversation. The

conversation was captured, recorded, and maintained on DEA's recording system. The following is a preliminary transcription of the conversation between the UC and AGUILERA:

UC: hey bro, I'm still good to meet tomorrow at 11. Need 1 ounce

AGUILERA: yes tomorrow I'll look at you there at 11

20. Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, previous conversations between the UC and AGUILERA, and knowledge of the investigation, I believe the UC conveyed to AGUILERA that the UC needed one ounce ("need 1 ounce") the following day and AGUILERA agreed to meet the UC at approximately 11 a.m.

      **C.    July 30, 2025: AGUILERA and SIERRA-GONZALEZ sell the UC suspected fentanyl in Oakland, CA**

21. On or about July 30, 2025, at approximately 9:52 a.m., a DEA UC and AGUILERA, who was using (510) 600-1952, engaged in a text message conversation. The conversation was captured, recorded, and maintained on DEA's recording system. The following is a preliminary transcript of the conversation between the UC and AGUILERA:

UC: hey bro I'll see you in an hour or so. I'll text you when I'm 20 mins away

AGUILERA: okay, let me know 20 minutes before

22. At approximately 11:16 a.m., surveillance agents observed AGUILERA and SIERRA arrive in the parking lot of the pre-determined drug deal location driving a Toyota Scion. Surveillance agents observed a Toyota Scion park near the UC's vehicle. Agents observed AGUILERA exit the driver seat and SIERRA exit the front passenger seat. Agents observed AGUILERA and SIERRA enter the UC's vehicle. While inside the UC's vehicle, the UC asked if the UC was talking to SIERRA or AGUILERA on the phone during previous phone conversations. AGUILERA told the UC that the UC was talking to AGUILERA, but SIERRA was the guy that would be conducting the transaction.

23. The UC observed SIERRA holding a clear plastic bag containing suspected fentanyl. The UC then handed SIERRA $1,000. SIERRA handed the clear plastic bag containing

7

suspected fentanyl to AGUILERA and SIERRA appeared to count the money. Upon completing the count of the money, SIERRA nodded to AGUILERA and AGUILERA then handed the clear plastic bag to the UC.[1] Agents observed AGUILERA and SIERRA exit the UC's vehicle, enter their vehicle and leave.

### D. August 12, 2025: Search Warrant at 2711 79th Avenue Oakland, CA; Arrest of AGUILERA

24. On or about August 8, 2025, the Honorable U.S. Magistrate Judge Sallie Kim authorized a search warrant, 3:25-mj-70970 SK, for the premises of 2711 79th Avenue Oakland, CA, a Toyota Scion, and the persons of MICKEY LNU and SIERRA.[2]

25. On or about August 12, 2025, the DEA and Immigration Customs Enforcement executed a search warrant at 2711 79th Avenue Oakland, CA. During the execution of the search warrant, agents contacted AGUILERA in a rear bedroom inside a secondary housing unit in the rear of the property. Agents also contacted other additional subjects at the residence as well.

26. During a search of AGUILERA's room, agents seized approximately 40.5 grams (with packaging) of suspected fentanyl.[3] Agents also observed numerous pieces of indicia within the room with the name of "Michael AGUILERA" to include a passport, Oakland Police Department traffic tickets, and DHS work visa. Agents also observed numerous sandwich bags and a digital scale containing white powder residue. Agents also seized a plastic wrapper containing approximately 20.7 grams of crystal substance from one of the bedrooms downstairs near the living room. AGUILERA was taken into custody.

### REQUEST FOR SEALING OF APPLICATION/AFFIDAVIT

27. It is respectfully requested that this Court issue an order sealing, until further

---

[1] A field test was conducted on the suspected fentanyl using a TruNarc Analyzer device. The field test showed the suspected fentanyl to be presumptive positive for the presence of fentanyl.

[2] MICKEY LNU was later positively identified as Michael AGUILERA-CABRERA based on a passport photo and AGUILERA self-identifying as "Michael AGUILERA."

[3] A field test was conducted on the suspected fentanyl using a TruNarc Analyzer device. The field test showed the suspected fentanyl to be presumptive positive for the presence of fentanyl.

order of this Court, all papers submitted in support of this Application for an Arrest Warrant and Criminal Complaint, including the Criminal Complaint, this Affidavit, the Arrest Warrant and the Sealing Order, except that the arrest warrant may be unsealed after it has been executed. Sealing is necessary because disclosure of the specified documents might jeopardize the defendant's arrest.

## CONCLUSION

28.     Based on the facts and circumstances set forth above, there is probable cause to believe that on or about July 30, 2025, in the Northern District of California, Michael AGUILERA-CABRERA distributed a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

/s/
HAKEEM ODUNIYI
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on August 14, 2025. This application and warrant are to be filed under seal.

HONORABLE SALLIE KIM
United States Magistrate Judge

2101-4915-9938, v. 2